IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN L. TAYLOR, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 22-231-J |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**O R D E R**

AND NOW, this 28th day of December, 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on May 2, 2023,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on March 31, 2023,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

Plaintiff Kathryn L. Taylor protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, claiming that she became disabled on October 21, 2016 due primarily to a variety of mental impairments, including post-traumatic stress disorder, dissociative identity disorder, major chronic depressive disorder, anxiety, and attention deficit hyperactivity disorder. (R. 299). After being denied

initially and upon reconsideration, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on May 18, 2021. (R. 19). ALJ John Fraser denied Plaintiff's request for benefits in an unfavorable decision dated June 7, 2021. (R. 19-32). On December 16, 2021, the Appeals Council declined to review the ALJ's decision. (R. 5-7). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment. (Doc. Nos. 12, 14).

## II.     Standard of Review

The Court's scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) ("'[t]he findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive'") (quoting 42 U.S.C. § 405(g)) (emphasis in original); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) ("[w]e have plenary review of all legal issues . . . and review the ALJ's findings of fact to determine whether they are supported by substantial evidence."). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). If the Court finds the Commissioner's findings of fact are supported by substantial evidence, then it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)).

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Additionally, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

"[A] disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting *Plummer*, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Fargnoli*, 247 F.3d at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The ALJ's disability determination is based on a five-step sequential evaluation process promulgated by the Social Security Administration. 20 C.F.R. § 404.1520. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity.

*See id.* at § 404.1520(a)(4)(i).  If so, the disability claim will be denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If not, the ALJ moves on to the second step of the process, which is to determine whether the claimant is suffering from a severe impairment.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  *Id.* at § 404.1522.  If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits.  If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment.  *See id.* at § 404.1520(a)(4)(iii).  If a claimant meets a listing, a finding of disability is automatically directed.  If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

At Step Four, the ALJ must formulate the claimant's residual functional capacity ("RFC").  A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments.  *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 404.1545(a).  The ALJ must consider all the evidence in the record in formulating the RFC.  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000).  The claimant bears the burden of demonstrating an inability to perform his or her past relevant work.  *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  *See id.* at § 404.1520(a)(4)(v).  In making this determination, the

4

ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at § 404.1523.

### III. The ALJ's Decision

At Step One, the ALJ found Plaintiff had not been engaged in substantial gainful activity since October 21, 2016 through her date last insured of September 30, 2020. (R. 21). The ALJ proceeded to Step Two of the process and found that Plaintiff had several severe impairments: post-traumatic stress disorder, dissociative identity disorder, depression, anxiety, attention deficit hyperactivity disorder, and a personality disorder. (R. 22). The ALJ concluded that none of Plaintiff's impairments met any of the listings that would satisfy Step Three. (R. 23).

At Step Four of the process, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

- understand, remember, and carry out simple instructions;
- occasional interactions with the public, supervisors, and co-workers; and
- one or two changes per week in an otherwise stable work routine.

(R. 25). The ALJ further found that Plaintiff was capable of performing past relevant work as a stable attendant. (R. 31). Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 32).

### IV. Legal Analysis

Plaintiff sets forth two arguments in support of remand: (1) the ALJ failed to properly evaluate treating opinion evidence and mischaracterized evidence leading the ALJ to incorrectly find that Plaintiff did not meeting a Listing at Step Three and to formulate an incomplete RFC; and (2) the ALJ's credibility assessment is defective because of his failure to accurately assess opinion evidence and consider Plaintiff's exemplary work history. (Doc. No. 13). The Court

agrees that the ALJ mischaracterized evidence leading to potentially inaccurate findings at Steps Three through Five and a potentially inaccurate evaluation of Plaintiff's credibility. However, the Court does not agree with Plaintiff that the ALJ did not sufficiently consider Plaintiff's work history. Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence and finds that remand is necessary for further consideration and discussion of this issue.

Plaintiff contends the ALJ incorrectly evaluated treating opinion evidence consistent with regulations and Third Circuit precedent and mischaracterized certain evidence in the record. (Doc. No. 13 at 3). Specifically, Plaintiff argues that the ALJ improperly found the opinions of Annette Tucker, LPC, Plaintiff's treating therapist, and Steven Pacella, Ph.D., a consultative psychological examiner, to be unpersuasive. (*Id.* at 16-19). Because of this error, Plaintiff posits a ripple-effect of errors is present in the ALJ's opinion, including the analysis of Plaintiff's credibility, the Listing analysis at Step Three, the RFC finding, and the decision based on vocational expert ("VE") testimony at Step Five. (*Id.* at 8-19). In addition to this, Plaintiff argues the ALJ erred by failing to consider her exemplary work history in his credibility assessment. (*Id.* at 19-20).

Defendant counters that substantial evidence supports the ALJ's evaluation of the medical opinion evidence. (Doc No. 15 at 11-15). Defendant notes that this evidence was analyzed correctly and that the ALJ explained why he found certain opinions unpersuasive. (*Id.* at 12-14). Defendant argues that the ALJ did not "cherry-pick" evidence in the record and that the Plaintiff's contention that the ALJ did so is simply a request to reweigh the evidence. (*Id.* at 14). Further, Defendant argues the ALJ properly evaluated Plaintiff's and subjective complaints. (*Id.* at 15-17). Defendant points to several facts the ALJ used to support his finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms

were not entirely credible, including that "Plaintiff has never required any inpatient psychiatric hospitalizations[.]" (*Id.* at 16 (citing R. 26, 582)).

The Third Circuit Court of Appeals has stated that an "ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." *Landeta v. Comm'r of Soc. Sec.*, 191 F. Appx 105, 110 (3d Cir. 2006). That being said, a harmless error, an error that does not change or determine the case's outcome, does not warrant remand or reversal. *See Rechenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010). Here, the ALJ committed harmful error by mischaracterizing the record, which influenced his determinations at Steps Three, Four and Five, and his analysis of Plaintiff's credibility. The ALJ repeatedly and incorrectly stated that there was "no indication in the record that the claimant required inpatient psychiatric hospitalization related to an exacerbation of mental symptoms[.]" (R. 24, 26). In contrast to this statement, the record presents a conflict as to whether Plaintiff was voluntarily or involuntarily committed during this time. (R. 473-74, 693-94). The ALJ did not address this conflict.

Specifically, the record reveals that there is ambiguity as to whether Plaintiff was a voluntary outpatient or an involuntary inpatient in August 2019. Indeed, Plaintiff's progress notes from American Family Psychiatry on August 1, 2019 state:

> ***Kathy continues to need outpatient treatment*** . . . ***Kathy is voluntary***. There is reasonable expectation that Kathy will make a timely and significant practical improvement in the presenting acute care symptoms as a result of psychiatric inpatient hospitalization and will require medically necessary care beyond two midnights. ***Kathy needs continued inpatient treatment. Kathy is court ordered, involuntary, committed*** . . . ***Return 4-6 weeks, or earlier if needed***.

(R. 473-74) (emphasis added). Additional progress notes from the same date read:

> Kathy needs ***continued inpatient treatment***. Kathy is ***court ordered, involuntary, committed*** . . . ***Return 4-6 weeks, or earlier if needed***.

(R. 693-94) (emphasis added). Perhaps most perplexing is that the ALJ cited the exhibit encompassing these ambiguous and contradictory statements in support of his finding that there was no indication that Plaintiff required inpatient psychiatric hospitalization. (R. 24, 26 (citing, *inter alia*, Exh. B3F)).

The ALJ's failure to resolve this ambiguity in the record either through testimony at the hearing or in his written decision created harmful error, as this misstatement was a critical piece of evidence in the ALJ's Step Three, Four, and Five determinations and in his evaluation of Plaintiff's credibility. At Step Three, the ALJ relied on this mischaracterization in explaining that Plaintiff did not meet "paragraph C" criteria. (R. 24). At Step Four, the ALJ found certain opinions unpersuasive in part because Plaintiff had never required inpatient psychiatric hospitalization. (R. 26). The ALJ's RFC finding naturally impacted his Step Five determination as the RFC determines if Plaintiff can perform past relevant work. (R. 31-32). Additionally, in assessing Plaintiff's credibility, the ALJ noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her medically determinable impairments were not entirely consistent with the record evidence. (R. 26). The ALJ went on to explain that this record evidence included the fact that Plaintiff had never required inpatient psychiatric hospitalization related to an exacerbation of mental symptoms. (*Id.* (citing Ex. B3F)). The ALJ's reliance on this mischaracterization also permeated his analysis of medical opinions as reference to the "objective medical evidence discussed above" included discussion of this misstatement. (R. 29-30 (finding Annette Tucker's, LPC, opinion not persuasive because it was "not supported by objective medical evidence discussed above[]" and stating Dr. Pacella's opinion was not persuasive because it was "inconsistent with the claimant's medical treatment history[.]").

In short, the ALJ's mischaracterization of the record affected the RFC formulation, and, as a result, the ALJ's questioning of the VE and Step Four and Five determinations. *See Hoffman v. Colvin*, No. 1:15-1516, 2016 WL 4761609, at *17 (M.D. Pa. Aug. 17, 2016) (stating "because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand."). Accordingly, the ALJ's analysis and conclusions at Steps Three, Four, and Five are not supported by substantial evidence.

The Court rejects Plaintiff's second argument – that the ALJ erred by failing to factor Plaintiff's exemplary work history into the credibility analysis. Plaintiff contends that the ALJ was obligated to consider this highly relevant credibility factor. (Doc. No. 13 at 19-20). It is true that the Third Circuit Court of Appeals has previously stated that when the claimant has worked for a long period of time, his testimony about his work capabilities should be afforded substantial credibility. *See Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981); *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984). However, an ALJ does not err by failing to afford a claimant heightened credibility based *solely* on his work history. *See Corley v. Barnhart,* 102 Fed. Appx. 752, 755 (3d Cir. 2004). There generally must be other factors, such as evidence of severe impairments or attempts to return to work, for a claimant to be entitled to heightened credibility. *See id.* However, in the usual course, the ALJ adequately addresses a claimant's work history where the ALJ hears testimony concerning a claimant's past work, correctly determines quarters of coverage, and accurately describes the past work. *Rinier v. Berryhill*, No. 17-125, 2018 WL 3574941, at *5 (W.D. Pa. July 25, 2018) (finding the ALJ "clearly was aware of" claimant's

9

work where the ALJ calculated quarters of coverage, discussed whether claimant could perform past relevant work, referenced claimant's past jobs, and heard claimant's testimony concerning past work); *Schwartz v. Berryhill*, No. CV 17-854, 2018 WL 3575046, at *8 (W.D. Pa. July 25, 2018); *Templon v. Berryhill*, No. CV 17-84-J, 2018 WL 4219366, at *1 n.1 (W.D. Pa. Sept. 5, 2018).

Here, it is clear the ALJ was aware of Plaintiff's past work as the ALJ discussed quarters of coverage, Plaintiff's past relevant work, and heard testimony from Plaintiff concerning the same. (R. 19, 31, 44-45). Specifically, Plaintiff discussed her work for Elizabeth Morgan and GD Leasing of Indiana. (R. 44-45). Plaintiff points to no other work history. (Doc. No. 13 at 19-20 (citing R. 259-61)). Accordingly, since the ALJ's credibility determination, despite not explicitly discussing Plaintiff's work history, is supported by substantial evidence, remand on this issue is unwarranted. *See Schreibeis v. Comm'r of Soc. Sec.*, No. 10-1025, 2012 WL 11101, at *1 n.1 (W.D. Pa. Jan. 3, 2012).

## V.    Conclusion

In sum, the record does not permit the Court to determine whether the findings of the ALJ at Steps Three, Four and Five are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:         Counsel of record